IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DERWIN JONES #383247

                                                    OPINION and ORDER

                Plaintiff,

                                                    08-cv-294-bbc

     v.

SCOTT HOFTIEZER and
DR. DAVID BURNETT,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Derwin Jones is proceeding in forma pauperis on his claims that his Eighth Amendment rights were violated when defendants Scott Hoftiezer and David Burnett denied him surgery for his hammertoe deformities and defendant Burnett failed to insure that he received medicated cream for his toes. The case is before the court on defendants' motion for summary judgment. Dkt. #30.

As an initial matter, on March 26, 2009, plaintiff filed a motion for summary judgment, dkt. #37, which was untimely under this court's preliminary pre-trial conference order. With his motion, plaintiff filed his response to defendants' proposed findings of fact, dkt. #39, and a memorandum in support of his response to defendants' proposed findings of facts, dkt. #38. Defendants interpreted these documents as plaintiff's response to

1

defendants' motion for summary judgment. Thus, although I will deny plaintiff's motion for summary judgment as untimely, I will consider his submissions in deciding defendants' motion for summary judgment. Because I find that plaintiff has failed to adduce sufficient evidence to raise a triable issue on his contention that defendants violated his Eighth Amendment rights by being deliberately indifferent to his serious medical need, I will grant defendants' motion for summary judgment.

I find the following facts to be undisputed.

UNDISPUTED FACTS

Plaintiff Derwin Jones is currently incarcerated at the Oshkosh Correctional Institution in Oshkosh, Wisconsin. Defendant Dr. David Burnett is the medical director of the Bureau of Health Services, which is responsible for providing medical care to inmates confined in the Department of Corrections adult institutions including the Oshkosh Correctional Institution. Defendant Scott Hoftiezer is the associate medical director of the bureau. Dr. Patrick Murphy is employed by the Department of Corrections as the physician at the Oshkosh Correctional Institution.

On January 25, 2008, plaintiff was seen by Dr. Murphy for complaints of diarrhea, continued toe pain and right knee pain. Murphy assessed the toe pain as hammertoe with skin irritation. Hammertoe is marked by a contracture of the tendon, laxity of the ligaments

2

and angulation of the second and third phalanges of the toe. There are a variety of treatments for hammertoes, including trimming or padding corns and calluses, changes in shoe wear, orthotic devices, injection therapy, medication and splinting or strapping. In some cases, usually when the hammertoes have become more rigid, surgery is provided to relieve the pain and discomfort caused by the deformity. After the assessment, Dr. Murphy submitted a Class II request to the Bureau of Health Services staff requesting a referral for plaintiff to an off-site podiatrist. The request was approved.

On February 11, 2008, plaintiff was seen by Alan Kalker, a podiatrist at the University of Wisconsin Hospital and Clinics. After examining plaintiff, Kalker found that he had moderate hammertoe deformities at toes two through four. He noted that "the degree of pain that [plaintiff] is complaining of is disproportionate to the presence of the deformity that is noted." Kalker concluded that it was not clear to him whether there was another underlying medical problem or whether plaintiff was exaggerating the level of pain in order to obtain surgical correction. Kalker recommended some laboratory studies and x-rays. He did not recommend surgery.

On March 3, 2008, plaintiff was seen for follow-up treatment at the University of Wisconsin Hospital and Clinics by John Finnel, a podiatrist. Finnell noted that the x-rays and blood work performed at plaintiff's last appointment were negative for any rheumatological condition. The x-rays did demonstrate hammertoe deformities. Plaintiff

3

told Finnell that he wanted to have the hammertoes surgically corrected and that he had discussed this option with Kalker at his last appointment at the UW Hospital.  Finnell discussed with plaintiff the potential complications of surgery including infection, scarring, numbness, prolonged swelling, recurrence and the need for further treatment.  Jones stated that he wanted to have both feet surgically corrected at the same time.

On March 15, 2008, Dr. Murphy performed a chart review of plaintiff's condition and noted that surgery was recommended by the UW Hospital.  Because plaintiff requested a stronger pain medication, Murphy prescribed Salsalate 750 milligrams twice a day for six months for pain.  On March 25, 2008, plaintiff was seen in the health services unit pursuant to his request for a different medication because Salsalate was upsetting his stomach.  Dr. Murphy discontinued the Salsalate and prescribed 20 milligrams of Piroxicam once a day for six months.  From March 3, 3008 until April 15, 2008, plaintiff submitted 14 health service requests inquiring about his surgery.

Dr. Murphy saw plaintiff on April 15, 2008 and noted that plaintiff had modest hammertoes, wore extensor digitorum shoes that were made to try to correct his hammertoes and had difficulty tolerating non-steroidal anti-inflammatory drugs.  Dr. Murphy prescribed plaintiff capsaicin cream four times a day for three months.  Dr. Murphy noted that the degree of pain that plaintiff complained of was disproportionate to the presence of the deformity.  Although Dr. Murphy did not believe that surgery was necessary to correct

4

plaintiff's hammertoes, he submitted a Class III request to a committee of doctors, proposing surgery for plaintiff. The objective of the committee's review is to determine whether the requested treatment is medically necessary or whether an alternative treatment would be better.

Defendant Hoftiezer was chair of the committee that reviewed the Class III request for plaintiff's surgery. The committee noted that plaintiff was able to walk the track and work with no observed pain behavior but that he wanted to be able to play basketball. The committee noted that the surgery was considered low risk but that the benefits of the surgery were uncertain. In light of plaintiff's lack of significant disability and lack of pain behavior, the committee denied plaintiff's request for surgery and recommended continuing conservative therapy, until a significant disability became a concern. They recommended treatment with capsaicin cream.

On April 18, 2009, Dr. Murphy noted that the request for surgery had been denied. He continued plaintiff's treatment with capsaicin cream. On May 29, 2008, he prescribed plaintiff 325 milligrams of acetaminophen four times a day for one year, as needed for pain and continued plaintiff's placement in a low bunk on a low tier.

On August 2, 2008, plaintiff submitted a health service request, stating that he had turned in his capsaicin cream four months before because it caused burning sensation. He stated that he was unaware of the acetaminophen prescription. Health Service staff noted

5

that plaintiff was able to walk on his feet but prescribed a treatment of foot soaks, analgesic balm, continued acetaminophen and low bunk placement.

At all times during plaintiff's incarceration at the Oshkosh Correctional Institution Dr. Murphy addressed plaintiff's medical needs on the basis of his own knowledge, experience and expertise as a licensed physician.

OPINION

Under Fed. R. Civ. P. 56, summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Goldstein v. Fidelity & Guaranty Insurance Underwriters, Inc., 86 F.3d 749, 750 (7th Cir. 1996) (citing Fed. R. Civ. P. 56); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In deciding a summary judgment motion the district judge's function "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Additionally, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. at 248. Furthermore, all reasonable inferences from undisputed facts should be drawn in favor of the nonmoving party. Baron v. City of Highland Park, 195 F.3d 333, 338 (7th Cir. 1999). However, the nonmoving party cannot simply rest upon the pleadings once the moving party has made a properly supported motion for summary judgment; instead the

nonmoving party must submit evidence to "set out *specific* facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added).

The Eighth Amendment prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs or suffering. Estelle v. Gamble, 429 U.S. 97, 103 (1976)). To be successful on a deliberate indifference claim, a prisoner must provide evidence of acts or omissions sufficiently harmful to establish deliberate indifference to his serious medical needs. Id. at 106. In other words, plaintiff must provide evidence from which it may be inferred that he had a serious medical need and that prison officials were deliberately indifferent to that need. Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997).

"Serious medical needs" include (1) conditions that are life-threatening or that carry risk of permanent serious impairment if left untreated; (2) those in which the deliberately indifferent withholding of medical care results in needless pain and suffering; and (3) conditions that have been "diagnosed by a physician as mandating treatment." Gutierrez, 111 F.3d at 1371-73. For the purposes of their motion, defendants concede that hammertoe deformities can rise to the level of "serious medical needs." However, they contend that the undisputed facts establish that they were not deliberately indifferent to that need.

Deliberate indifference in the denial or delay of medical care is evidenced by actual

7

intent or reckless disregard.  A prison official has a sufficiently culpable state of mind when the official "knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk."  Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006) (citing Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir. 2002)).  Mere disagreement with a doctor's medical judgment, inadvertent error, negligence, malpractice or even gross negligence in providing treatment is insufficient to establish deliberate indifference.  Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007); Washington v. LaPorte County Sheriff's Dept., 306 F.3d 515, 518 (7th Cir. 2002).  "[T]he Eighth Amendment is not a vehicle for bringing claims for medical malpractice."  Snipes v. DeTella, 95 F.3d 586, 590 (7th Cir. 1996)(citations omitted).

When a prisoner disagrees with a doctor's treatment there is no constitutional claim "unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition."  Id. at 592 (internal quotation omitted).  To allow a jury to infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to imply that it was not actually based on a medical judgment.  Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 262 (7th Cir. 1996).

In this case, plaintiff was seen twice by podiatrists at the University of Wisconsin Hospital and Clinics for his hammertoe condition.  Dr. Kalker reported that plaintiff had

moderate hammertoe deformities and that his reported pain was disproportionate to the deformity. He ordered more tests but did not recommend surgery. When plaintiff returned to the clinic, plaintiff told Dr. Finnell that he wanted surgery performed on his toes. Finnell discussed the potential complications of the surgery with plaintiff. The record does not indicate that Finnell explicitly recommended surgery. However, on March 25, 2008 when Dr. Murphy reviewed plaintiff's chart, he noted that surgery was recommended by the University of Wisconsin doctors. Even though Murphy did not believe surgery was necessary for plaintiff's toes, he submitted a class III request for the surgery for committee review because plaintiff wanted the surgery.

The committee chaired by defendant Hoftiezier reviewed the request and noted that podiatry recommended the surgery. The committee denied plaintiff's request for surgery and recommended conservative therapy including capsaicin to alleviate his pain. (Because defendant Burnett did not have any involvement in reviewing the request for surgery, he cannot be liable for any constitutional violation caused by the denial of the surgery. See Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995) (liability under 42 U.S.C. § 1983 requires defendant's personal involvement in constitutional violation).) Thus, the issue is whether defendant Hoftiezer's decision was so far afield of accepted professional standards as to imply that it was not actually based on a medical judgment.

Plaintiff has presented no evidence that defendant Hoftiezer's decision was far afield

9

of accepted medical standards. His sole argument is that the podiatrists' surgery recommendation should have been followed because defendant Hoftiezer was not a specialist in the field of podiatry. This argument lacks merit because plaintiff has presented no evidence that surgery was the only option to reduce plaintiff's pain or that the podiatrists' recommendations were not considered. In fact, the evidence establishes that podiatrist Kalker never recommended surgery and instead noted that plaintiff had a modest degree of hammertoe deformities and that his degree of pain was disproportionate to the degree of the deformities. Plaintiff merely disagrees with defendant Hoftiezer's medical judgment. Such disagreement is not evidence of a constitutional violation. Snipes, 95 F. 3d at 592. There are no facts in evidence from which a reasonable jury could infer that defendant Hoftiezer was deliberately indifferent to plaintiff's serious medical need by denying his request for surgery.

Further, the evidence establishes that plaintiff was continuously treated by Dr. Murphy for the pain of his hammertoes. He was prescribed various medications for his pain, including Salsalate, Piroxicam, acetaminophen and Ketoprofen. Plaintiff received special hammertoe shoes, foot soaks and an analgesic balm. Also he was restricted to a low bunk in a low tier. Further, there is no evidence that the treatment he received made his condition worse. Therefore, plaintiff's disagreement with his medical treatment does not rise to the level of an Eighth Amendment claim. Snipes, 95 F. 3d at 592.

As a final matter, plaintiff was also allowed to proceed in forma pauperis on an additional Eighth Amendment claim that defendant Burnett failed to insure that he received capsaicin cream for his pain. Plaintiff has submitted no evidence in support of this claim, which he needed to do to survive summary judgment. E.g., AA Sales & Associates, Inc. v. Coni-Seal, Inc., 550 F.3d 605, 612 (7th Cir. 2008) ("[S]ummary judgment is the 'put up or shut up' moment in the life of a case.") In fact, the undisputed facts indicate that Dr. Murphy prescribed the capsaicin cream for plaintiff on April 15, 2008 but that plaintiff turned it in shortly thereafter because it was causing a burning sensation. Plaintiff has submitted no evidence from which a reasonable jury could infer that defendant Burnett was deliberately indifferent to his serious medical need by denying him capsaicin cream.

ORDER

IT IS ORDERED that:

1. Plaintiff Derwin Jones' motion for summary judgment, dkt. #37, is DENIED;

2. The motion for summary judgment, dkt. #30, filed by defendants Scott Hoftiezer and Dr. David Burnett is GRANTED;

11

3. The clerk of court is directed to enter judgment DISMISSING this case in favor of defendants.

Entered this 11th day of May, 2009.

                        BY THE COURT:

                        /s/

                        _____
                        BARBARA B. CRABB
                        District Judge